# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LISA WALKER, | ) | |
| TOMMY WALKER, | ) | |
| JOHN SHANNON SHEARRER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-492-JHP |
| | ) | |
| RON YATES, | ) | |
| ANTHONY THOMPSON, | ) | |
| JOHN PEARSON, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION

Before the Court are the Motion for Summary Judgment by Defendant Ron Yates and Brief in Support (Docket Nos. 48 and 49), Plaintiff Lisa Walker's Repose to Defendants' Motions for Summary Judgment Individually and Brief in Support (Docket Nos. 62 and 64), Plaintiff John Shannon Shearrer's Response to Defendants' Motions for Summary Judgment Individually and Brief in Support (Docket Nos. 63 and 65), Plaintiff Tommy Walker's Response to Defendants' Motions for Summary Judgment Individually and Brief in Support (Docket Nos. 66 and 67), and the Reply Brief of Defendant Ron Yates in Support of His Motion for Summary Judgment (Docket No. 79). Yates asserts that he is entitled to qualified immunity from Plaintiffs' claims under 42 U.S.C. § 1983. For the reasons set forth herein, Yates' motion is hereby GRANTED.

## Background

On November 25, 2004, the Muskogee Police Department dispatch reported that it had received a telephone call indicating that a burglary had taken place at a convenience store

1

located on West Broadway Street in Muskogee, Oklahoma. Defendants Ron Yates, Anthony Thompson, and John Pearson, Muskogee Police Officers, all responded to the dispatch report. Officer James Hamlin, a trainee accompanying Yates, interviewed a witness to the burglary, who stated that he had observed two suspects fleeing the store across a field to a nearby home. An investigation by Yates revealed a broken window and a shoe print on top of a cardboard beverage container inside the store.

In the meantime, Pearson, a canine handler, used his dog to locate a scent trail leading away from the store. The dog tracked the scent trail across the field and directly to the front porch of the home located at 3510 Oklahoma, approximately 100 to 150 yards from the store. Pearson then informed the other officers of his location. Taking the witness with them, the other officers left the store and traveled by car to Pearson's location. Upon arrival, the officers discovered a pair of shoes on the front porch matching the shoe print found in the convenience store.

Awakened by the sound of barking dogs, Plaintiff Lisa Walker, one of the residents of 3510 Oklahoma, looked outside her front door and saw several police officers with flashlights walking through her neighbor's yard. Disarming her alarm system, Lisa Walker, wearing a loose shirt and pajama pants, stepped outside to investigate. Seeing her, officers instructed Lisa Walker to stay on her porch and informed her the burglary. After Lisa Walker indicated in response to questioning that she had not seen anything unusual, the officers inquired whether any men were inside her residence. Lisa Walker indicated that her fiancé, Plaintiff John Shannon Shearrer, was inside sleeping.

At the officers' request, Lisa Walker went inside and woke Shearrer, who came outside

to speak with the officers. Pearson then requested permission to search the back yard, but after Shearrer corralled his own dog and opened the gate, Pearson changed his mind. Instead, returning to the front of the residence, Pearson asked Shearrer and Lisa Walker whether anyone else was in the residence. After Shearrer and Lisa Walker informed Pearson that Tommy Walker, Lisa Walker's son, and Wesley Byrd, a foster child who had been staying with Plaintiffs for some time, were inside sleeping, Pearson requested and received permission to accompany Shearrer and Lisa Walker into the residence so that he could look at the two boys. Entering the room, Pearson and another officer shined their flashlights at Tommy Walker and Byrd.

After observing the two boys, the officers, Lisa Walker, and Shearrer returned to the front of the residence. Once outside, Pearson informed Shearrer and Lisa Walker that the police had a witness to the burglary and requested that Shearrer and Lisa Walker bring Tommy Walker out front. After an angry exchange between Pearson and Shearrer, Shearrer, upset with the conduct of Pearson and the other officers, agreed to bring Tommy Walker out front so that the officers could apologize for bothering him, which Pearson apparently agreed to do. To that end, Lisa Walker reentered the residence, woke her son, and directed him to put on some clothes, and led him onto the front porch. Because Tommy Walker was sick at the time, Lisa Walker instructed her son to cover his mouth with his sweatshirt.

As Tommy Walker exited the residence, Yates opened the door of his car to allow the witness a better view. When the witness subsequently identified Tommy Walker as one of the two people he had seen fleeing the convenience store, Yates gave Pearson a signal indicating that the witness had made a positive identification. Pearson and another officer then placed Tommy Walker under arrest, handcuffed him, and led him to Thompson, who took custody of Tommy

Walker and placed Tommy Walker inside one of the police cars.

Following Tommy Walker's arrest, a hysterical Lisa Walker began to move toward Yates, Pearson, and the witness, screaming and crying. Concerned that his dog might interpret Lisa Walker's actions as a threat to its handler, Pearson began backing away from Lisa Walker, pulling his dog with him. Ignoring the officers' repeated instructions to stay away, Lisa Walker, who asserts that she was only requesting assistance from Yates, continued to move forward and grabbed Yates by the arm.

Yates, apparently construing Lisa Walker's actions to be both an attempt to interfere with her son's arrest and a threat to himself and others, reacted swiftly and forcefully by applying an arm bar, a standard maneuver taught to police offers by the Counsel on Law Enforcement Education and Training (CLEET), lifting Lisa Walker several feet off of the ground and slamming her onto her back. As Lisa Walker struck the ground, her shirt lifted up above her head, exposing her breasts, and she experienced intense pain in her left knee. Yates then straddled the still-struggling Lisa Walker, attempting to roll her over on her stomach so that he could handcuff her. During their struggle, Lisa Walker's loose fitting pajama pants began sliding down below her waist, exposing her naked backside. As the same time, Pearson, still back-peddling away from Lisa Walker, tripped and fell, losing control of his dog. Unbeknownst to Yates, the dog lunged forward and bit Lisa Walker's injured left leg, breaking the skin and tugging her pajama pants further down her body. Recovering quickly, Pearson pulled the dog off of and away from Lisa Walker.

Having witnessed Lisa Walker's altercation with Yates, Shearrer began running toward Yates. According to Plaintiffs, a group of officers tackled Shearrer before he could reach Yates,

4

although Yates and Pearson contend that Shearrer actually grabbed Yates from behind and attempted to pull him away from Lisa Walker before other officers could reach and subdue him. Shearrer and Lisa Walker were both arrested for interfering with an officer in the performance of his duties. Although Shearrer and Tommy Walker were transported directly to the Muskogee County Jail, Lisa Walker was first taken to a local hospital, where doctors cleaned and bandaged the dog bite on her leg.

Following Plaintiffs' arrests, Pearson approached Byrd, a former foster child who had been living at 3510 Oklahoma for some time, and sought Byrd's leave to search the home. Although Byrd was unwilling to consent to a search of the entire home, he did consent to a search of the bedroom he shared with Tommy Walker. After searching the bedroom thoroughly, Pearson departed.

On November 16, 2006, Plaintiffs filed suit against Defendants Yates, Thompson, and Pearson, as well as several unnamed "John Does" pursuant to 42 U.S.C. § 1983, alleging that Defendants violated their rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution while acting under color of state law.[1] As a result of Defendants' actions, Plaintiffs requested actual damages for "physical, mental, and emotional pain, and...property loss due to the damage and destruction Defendants caused to their residence" (Am. Compl. ¶ 22 at 6), as well as punitive damages.

On May 17, 2007, Yates, like his fellow Defendants, filed a motion for summary

---

[1] Although Plaintiffs subsequently amended their complaint to name additional police officers as defendants and to remove the "John Does," Plaintiffs failed to serve the new defendants and, on July 6, 2007, stipulated to the dismissal with prejudice of all unserved defendants. Thus, only Yates, Thompson, and Pearson remain as Defendants in the present action.

judgment. In his motion, Yates asserts that he is entitled to qualified immunity from Plaintiffs' § 1983 claims because Plaintiffs cannot prove that Yates violated any of their clearly established constitutional rights. Rather than respond specifically to Yates' motion, each Plaintiff has filed a response addressing all three Defendants' motions for summary judgment collectively.

## **Discussion**

As a general rule, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*. In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

As the Tenth Circuit has noted, however, "summary judgment decisions involving a qualified immunity defense are subject to a somewhat different analysis on review than are other summary judgment rulings." *Oliver v. Woods*, 209 F.3d 1179, 1184 (10th Cir. 2000). "When an officer asserts a defense of qualified immunity, the plaintiff bears a heavy two-part burden." *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007). First, "[t]he plaintiff...must...establish that the defendant violated a constitutional right." *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007). If, viewed in the light most favorable to the plaintiff, "the officer's conduct did not violate a constitutional right, the inquiry ends and the officer is entitled to qualified immunity."

6

*Wilder*, 490 F.3d at 813; *see Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Cortez*, 478 F.3d at 1114.

"If, on the other hand, a violation has been shown, the plaintiff must then show that the constitutional right was clearly established." *Cortez*, 478 F.3d at 1114; *see Saucier*, 533 U.S. at 201. As the Supreme Court has made clear, "[t]his inquiry...must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. Instead, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000). Moreover, it is the plaintiff that "bears the burden of articulating clearly established law." *Novitsky v. City Of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007).

"If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity. *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). "Thus, a defendant is entitled to qualified immunity if the plaintiff fails to show a violation of a constitutional right at all." *Id*. Likewise, "a defendant is entitled to qualified immunity if the plaintiff fails to show that the law was clearly established." *Id*. As a result, "[o]nly if the plaintiff succeeds in carrying his two-part burden, does the burden shift to the defendant...[to] show that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id*.

7

In their Amended Complaint, Plaintiffs allege that Defendants (1) used "excessive [force] under [the] circumstances" (Am. Compl. ¶ 10 at 3); (2) "restrain[ed], arrest[ed], and imprison[ed]... Plaintiffs...against their will and without legal or factual justification" (*id*. ¶ 12 at 4); (3) "effectuated a search of the Plaintiffs' residence...without a warrant, without the Plaintiffs' consent, without the officers seeing contraband in plain view, and without any exigent circumstances that would negate the need for a warrant" (*id*. ¶ 13); and (4) "caused extensive property damage in an attempt to recover evidence of the alleged burglary" (*id*. ¶ 14). Plaintiffs assert that Defendants' actions violated the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.

Plaintiffs' Amended Complaint fails to identify which of the officers present at the scene engaged in each of the allegedly illegal activities. Nevertheless, Yates' uncontested[2] statement of material facts indicates that Yates was not involved in the arrest of Shearrer (Yates' Mot. Br. ¶ 21 at 4) and did not enter Plaintiffs' home (*id*. ¶ 22). Indeed, Shearrer and Lisa Walker merely state that "a group of officers jumped on [Shearrer]" (Shearrer's Resp. Br. ¶ 9 at 5; Lisa Walker's Resp. Br. ¶ 20 at 6) and that "Pearson illegally searched [Plaintiffs'] house" (Lisa Walker's Resp. Br. ¶ 24 at 7). As the undisputed facts of this case indicate that Yates did not

---

[2] Pursuant to Local Civil Rule 56.1(c), "[t]he response brief in opposition to a motion for summary judgment...shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist." Each of these separately numbered facts "shall, if applicable, state the numbered paragraphs of the movant's [statement of material] facts that are disputed." *Id*. "All material facts set forth in the statement of material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." *Id*. None of the statements of material fact set forth in Yates' motion are specifically controverted by Plaintiffs' respective statements of fact. Accordingly, each of the material facts set forth in Yates' statement are deemed admitted for purposes of his motion.

participate in the arrest of Shearrer, his subsequent jailing, or the search of Plaintiffs' home, the Court construes Plaintiffs' Amended Complaint to assert against Yates only claims relating to (1) the warrantless arrests of Tommy and Lisa Walker, (2) the use of excessive force against Lisa Walker, and (3) the imprisonment of Tommy and Lisa Walker. The Court addresses these claims separately below.

### A. Whether the Warrantless Arrests of Tommy and Lisa Walker Violated Their Fourth Amendment Rights

"A police officer may arrest a person without a warrant if he has probable cause to believe that the person committed a crime." *Romero*, 45 F.3d at 1476. "'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.'" *Id*. (quoting *Jones v. City and County of Denver, Colo.*, 854 F.2d 1206, 1210 (10th Cir. 1988)). Moreover, in the context of an action brought pursuant to § 1983, "the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Indeed, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Id*. The Court addresses the reasonableness of Tommy and Lisa Walker's warrantless arrests separately.

#### 1. Tommy Walker's Arrest

Yates offers several undisputed material facts in support of his contention that a reasonable officer in his position could have believed there was probable cause to arrest Tommy

9

Walker: (1) Pearson's police dog tracked a scent trail directly from the scene of the burglary to Tommy Walker's home (Yates' Mot. Br. ¶ 4 at 2), (2) the soles of a pair of shoes discovered on the porch of Tommy Walker's home matched a footprint left at the crime scene (*id.* ¶ 5), and (3) a witness to the burglary who accompanied officers to Tommy Walker's home positively identified Tommy Walker as one of the burglars (*id.* ¶ 6). Based upon these undisputed facts, Yates argues that he and the other officers possessed probable cause to believe that Tommy Walker was involved with the burglary. Accordingly, Yates asserts that Tommy Walker's has failed to demonstrate a violation of his Fourth Amendment rights resulting from his warrantless arrest.

In contrast, Tommy Walker argues that his arrest "was completely without probable cause." (Tommy Walkers' Resp. Br. at 7.) In support of his argument, Tommy Walker asserts that at the time of his arrest, Tommy Walker "was a sixteen year old kid...[but] [t]he police had nothing else to go on except a black and a white man." (*Id.*) Moreover, Tommy Walker attempts to undermine the reliability of the witness's identification of him as one of the burglars by noting that "the break-in happened at night," "it was still dark when [he] came outside," and "the witness was far away, behind overgrown brush and sitting behind tinted windows." (*Id.*) Tommy Walker asserts that "[t]his gives police no reason to suspect [he] was one who broke into the store." (*Id.*)

In spite of Tommy Walker's arguments, however, the Court notes that the accuracy of the witness's identification is not itself determinative of whether, based on the fact that the witness identified Tommy Walker as one of the burglars, in conjunction with the other facts and circumstances known to Yates, a reasonable officer in Yates' position could have believed there

was probable cause supporting Tommy Walker's arrest. Instead, based upon the undisputed facts of this case, the Court finds that a reasonable officer in Yates' position could have believed that probable cause existed for Tommy Walker's arrest. The Court therefore concludes that Yates is entitled to qualified immunity from Tommy Walker's § 1983 claim insofar as it relates to his warrantless arrest.

### 2. Lisa Walker's Arrest

In support of his assertion that he "had probable cause to arrest...Lisa Walker based upon information known to him at the time of [her] arrest," (Yates' Mot. Br. at 9), Yates states that after observing her son's arrest, "Lisa Walker ran toward [himself], John Pearson, and the eye witness acting irate, yelling and screaming, and putting her hands on...Yates" (*id*. ¶ 8 at 2), in spite of repeated orders by Yates and Pearson to stay back (Yates' Mot. Br. Ex. 16 at 41; Yates' Mot. Br. Ex. 18 at 76). Accordingly, Yates asserts that "Lisa Walker was arrested for interfering."[3] (Yates' Mot. Br. ¶ 10 at 2.) In contrast, Lisa Walker notes that "[i]n the beginning [the police officers] were looking for two men, one white and one black for breaking into a convenience store." (Lisa Walker's Resp. Br. at 11.) Lisa Walker therefore expresses confusion as to "[h]ow...it [went] from that to arresting Lisa Walker," asserting her belief that Yates and the other officers "arrested [her] for asking Ron Yates for help in the arrest of her son." (*Id*.)

The Court notes that Lisa Walker does not contest Yates' assertions about the presence of himself, Pearson, and the witness or Lisa Walker's own hysterical behavior. Indeed, in her deposition, Lisa Walker admits that she came toward Yates "screaming, crying, and pleading"

---

[3] "Any person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor." Okla. Stat. tit. 21, § 540.

11

and that she "touched his arm." (Lisa Walker's Resp. Br. Ex. 10 at 129.) Nor does Lisa Walker address her failure to follow the officers' express instructions to stay away. Under the circumstances established by the uncontested facts and evidence presented, the Court finds that probable cause existed to believe that Lisa Walker was interfering with the arrest of Tommy Walker. The Court therefore finds that Lisa Walker has failed to satisfy her burden of alleging sufficient facts to establish that Yates' warrantless arrest of her violated her Fourth Amendment rights. Accordingly, the Court concludes that Yates is entitled to qualified immunity from Lisa Walker's § 1983 claim insofar as it relates to her warrantless arrest.

**B.** **Whether the Use of Force Against Lisa Walker Violated Her Fourth Amendment Rights**

"[A]...claim that law enforcement officials used excessive force in the course of making an arrest...[is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). As the Supreme Court explained in *Graham*, "[b]ecause [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application...its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396 (internal citation and quotations omitted). Thus, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Id*. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d. Cir. 1973)) (internal citation omitted). Instead, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question

is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id*. at 397.

As noted above, the undisputed facts set forth by Yates indicate that after observing the arrest of her son, Lisa Walker, "acting irate, yelling and screaming," approached Yates, Pearson, and the witness who had identified Tommy Walker and "put[] her hands on...Yates." (Yates' Mot. Br. ¶ 8 at 2.) Moreover, as also noted above, the unchallenged deposition testimony of both Yates and Pearson indicates Lisa Walker failed to heed the officers' repeated orders to stay away. (Yates' Mot. Br. Ex. 16 at 41; Yates' Mot. Br. Ex. 18 at 76.) In response, Yates "got ahold of Lisa Walker, who was resisting, underneath an arm and flipped her onto her back, where she continued to resist, [until Yates] turned her over, and handcuffed her." (Yates Mot. Br. ¶ 11 at 3.) According to Yates, this procedure, known as an arm bar, is "taught by CLEET as a proper procedure to use." (*Id*. ¶ 12). In light of these circumstances, Yates contends that the force applied to Lisa Walker while affecting her arrest for interfering with the officers' arrest of Tommy Walker was objectively reasonable.

In her response brief, Lisa Walker cites a number of facts that she believes render Yates' use of force excessive. First, Lisa Walker asserts that upon seeing her son arrested, she "started crying for help and approached...Yates," where she "put her hand on his arm and asked him to help her." (Lisa Walker's Resp. Br. at 10.) Lisa Walker argues that she was therefore "not acting in a threatening way" and that "[a]ny reasonable officer in a similar situation should be able to tell the difference." (Lisa Walker's Resp. Br. at 10.) Lisa Walker also alleges that Yates "pick[ed] [her] up, sw[u]ng her legs over her head, and body slam[med] her." (*Id*.) As a result,

13

her shirt "fl[ew] over her head and...[exposed] her breasts" (*id.*) and her knee was injured (*id.* ¶ 17 at 6). Likewise, when Yates turned her over to handcuff her, Lisa Walker claims that her "pajama bottoms came down, exposing her behind to numerous officers." (*Id.* at 10.) Accordingly, Lisa Walker argues that "Yates' use of force...can in no way be classified as objectively reasonable." (*Id.*)

None of the additional facts alleged by Lisa Walker, however, change the essential nature of the encounter between her and Yates. Neither Lisa Walker's subjective state of mind while approaching Yates nor her alleged requests for assistance alter the fact that she was acting hysterically at the time, that she disobeyed the officers' orders to stay back, and that she made physical contact with Yates while he was standing near the witness and another officer. Under those circumstances, the Court finds that a reasonable officer in Yates' position could have reasonably believed that Lisa Walker was interfering in the arrest of Tommy Walker and posed a potential danger to those present. Likewise, although Plaintiffs' describe Yates lifting Lisa Walker from her feet slamming her to the ground, they do not dispute Yates' testimony that the maneuver employed was a standard arm bar as taught by CLEET. In addition, Lisa Walker's description of the manner in which her pajamas became disarranged, exposing her body to bystanders, does not impact the objective reasonableness of Yates' use of force when, as Lisa Walker concedes, she was wearing a "loose fitting" T-shirt and that her pants were "kind of loose" (Lisa Walker's Resp. Br. Ex. 10 at 131, 134) and does not allege that her disrobing was an intended consequence of Yates' actions. Finally, Lisa Walker's alleged knee injury, though presumably resulting from the force of the take down, does not appear, on the facts alleged, to have been an intended result of Yates' actions. Instead, both the disarray of Lisa Walker's

clothing and the injury to her knee appear to be unintended collateral consequences of Yates' arm bar maneuver.

Under the circumstances presented, the Court concludes that, even viewed in the light most favorable to Lisa Walker, the actions of Yates, though aggressive and not without physical and emotional consequences to Lisa Walker, were objectively reasonable and therefore did not constitute an excessive use of force in violation of the Fourth Amendment. Yates, facing an irate and screaming mother who had recently witnessed her son's arrest, was not responding to his orders to stay back, and had initiated physical contact with him, made a split-second decision to employ a standard police maneuver to prevent her from interfering with Tommy Walker's arrest or from harming Yates or other bystanders. In light of these undisputed facts, the Court finds that Lisa Walker's allegations are insufficient to establish that a violation of her Fourth Amendment rights.

Moreover, even if Yates' use of force was excessive, Lisa Walker has utterly failed to prove that Yates' actions violated clearly established law. As noted above, it is not enough for a plaintiff to allege that an officer violated a some broad, generalized right, like the right to be free from the use of excessive force under the Fourth Amendment. *Saucier*, 533 U.S. at 201-202. Instead, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 201. Likewise, it is the plaintiff's burden to "prove the right was sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001); *see also Novitsky*, 491 F.3d at 1255 ("The plaintiff

bears the burden of articulating clearly established law.").

In spite of her own recognition that "a plaintiff faced with a defense of qualified immunity bears the burden of showing that the officer's conduct violated law that was 'clearly established' such that a reasonable officer would have known [his] conduct violated an established right," (Lisa Walker's Mot. Br. at 9), Lisa Walker fails to cite any cases supporting the proposition that Yates' conduct violated clearly established law. Indeed, other than her bald assertion that "Yates used unreasonable force during her arrest" (*id*. at 10), Lisa Walker does not attempt to define the contours or scope of the "clearly established" right that Yates' conduct allegedly violated. Because Lisa Walker has failed establish that Yates violated clearly established law, the Court concludes that Yates is entitled to qualified immunity from Lisa Walker's excessive force claim.

C. **Whether the Imprisonment of Tommy and Lisa Walker Violated Their Fourteenth Amendment Rights**

"Section 1983 imposes liability [only] for violation of rights protected by the Constitution." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). As the Supreme Court observed in *Baker*, "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." *Id*. Nevertheless, in their respective response briefs, Tommy and Lisa Walker both argue that "[s]ince there was no probable cause for [their] arrest[s] and [their] arrest[s] violated [their] Fourth Amendment rights, it follows that [their] jailing violates [their] Fourteenth Amendment rights." (Tommy Walker's Resp. Br. at 8; Lisa Walker's Resp. Br. at 11.) As this forms the sole basis for Tommy and Lisa Walker's claims that they were wrongfully imprisoned in violation of the Fourteenth Amendment, in light of the Court's

previous findings that the warrantless arrests of Tommy and Lisa Walker were lawful, the Court concludes that Tommy and Lisa Walker have likewise failed to establish that their imprisonment subsequent to otherwise lawful warrantless arrests violates their Fourteenth Amendment rights. Consequently, Yates is entitled to qualified immunity from Tommy and Lisa Walker' § 1983 claims premised thereon.

## Conclusion

For the reasons set forth above, the Court finds that Defendant Ron Yates is entitled to qualified immunity from all of Plaintiffs' claims against him pursuant to 42 U.S.C. § 1983. The Motion for Summary Judgment by Defendant Ron Yates (Docket No. 48) is therefore GRANTED.

IT IS SO ORDERED this 10th day of September, 2007.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma