IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

LISA WALKER, )
TOMMY WALKER, )
JOHN SHANNON SHEARRER, )
)
      Plaintiffs, )
)
v. ) Case No. 06-CV-492-JHP
)
RON YATES, )
ANTHONY THOMPSON, )
JOHN PEARSON, )
)
      Defendants. )

## ORDER AND OPINION

Before the Court are the Motion for Summary Judgment by Defendant John Pearson and Brief in Support (Docket Nos. 50 and 51), Plaintiff Lisa Walker's Repose to Defendants' Motions for Summary Judgment Individually and Brief in Support (Docket Nos. 62 and 64), Plaintiff John Shannon Shearrer's Response to Defendants' Motions for Summary Judgment Individually and Brief in Support (Docket Nos. 63 and 65), Plaintiff Tommy Walker's Response to Defendants' Motions for Summary Judgment Individually and Brief in Support (Docket Nos. 66 and 67), and the Reply Brief of Defendant John Pearson in Support of His Motion for Summary Judgment (Docket No. 81). Pearson asserts that he is entitled to qualified immunity from Plaintiffs' claims under 42 U.S.C. § 1983. For the reasons set forth herein, Pearson's motion is GRANTED.

## Background

On November 25, 2004, the Muskogee Police Department dispatch reported that it had received a telephone call indicating that a burglary had taken place at a convenience store

1

located on West Broadway Street in Muskogee, Oklahoma. Defendants Ron Yates, Anthony Thompson, and John Pearson, Muskogee Police Officers, all responded to the dispatch report. Officer James Hamlin, a trainee accompanying Yates, interviewed a witness to the burglary, who stated that he had observed two suspects fleeing the store across a field to a nearby home. An investigation by Yates revealed a broken window and a shoe print on top of a cardboard beverage container inside the store.

In the meantime, Pearson, a canine handler, used his dog to locate a scent trail leading away from the store. The dog tracked the scent trail across the field and directly to the front porch of the home located at 3510 Oklahoma, approximately 100 to 150 yards from the store. Pearson then informed the other officers of his location. Taking the witness with them, the other officers left the store and traveled by car to Pearson's location. Upon arrival, the officers discovered a pair of shoes on the front porch matching the shoe print found in the convenience store.

Awakened by the sound of barking dogs, Plaintiff Lisa Walker, one of the residents of 3510 Oklahoma, looked outside her front door and saw several police officers with flashlights walking through her neighbor's yard. Disarming her alarm system, Lisa Walker, wearing a loose shirt and pajama pants, stepped outside to investigate. Seeing her, officers instructed Lisa Walker to stay on her porch and informed her the burglary. After Lisa Walker indicated in response to questioning that she had not seen anything unusual, the officers inquired whether any men were inside her residence. Lisa Walker indicated that her fiance, Plaintiff John Shannon Shearrer, was inside sleeping.

At the officers' request, Lisa Walker went inside and woke Shearrer, who came outside

to speak with the officers. Pearson then requested permission to search the back yard, but after Shearrer corralled his own dog and opened the gate, Pearson changed his mind. Instead, returning to the front of the residence, Pearson asked Shearrer and Lisa Walker whether anyone else was in the residence. After Shearrer and Lisa Walker informed Pearson that Tommy Walker, Lisa Walker's son, and Wesley Byrd, a foster child who had been staying with Plaintiffs for some time, were inside sleeping, Pearson requested and received permission to accompany Shearrer and Lisa Walker into the residence so that he could look at the two boys. Entering the room, Pearson and another officer shined their flashlights at Tommy Walker and Byrd.

After observing the two boys, the officers, Lisa Walker, and Shearrer returned to the front of the residence. Once outside, Pearson informed Shearrer and Lisa Walker that the police had a witness to the burglary and requested that Shearrer and Lisa Walker bring Tommy Walker out front. After an angry exchange between Pearson and Shearrer, Shearrer, upset with the conduct of Pearson and the other officers, agreed to bring Tommy Walker out front so that the officers could apologize for bothering him, which Pearson apparently agreed to do. To that end, Lisa Walker reentered the residence, woke her son, and directed him to put on some clothes, and led him onto the front porch. Because Tommy Walker was sick at the time, Lisa Walker instructed her son to cover his mouth with his sweatshirt.

As Tommy Walker exited the residence, Yates opened the door of his car to allow the witness a better view. When the witness subsequently identified Tommy Walker as one of the two people he had seen fleeing the convenience store, Yates gave Pearson a signal indicating that the witness had made a positive identification. Pearson and another officer then placed Tommy Walker under arrest, handcuffed him, and led him to Thompson, who took custody of Tommy

Walker and placed Tommy Walker inside one of the police cars.

Following Tommy Walker's arrest, a hysterical Lisa Walker began to move toward Yates, Pearson, and the witness, screaming and crying. Concerned that his dog might interpret Lisa Walker's actions as a threat to its handler, Pearson began backing away from Lisa Walker, pulling his dog with him. Ignoring the officers' repeated instructions to stay away, Lisa Walker, who asserts that she was only requesting assistance from Yates, continued to move forward and grabbed Yates by the arm.

Yates, apparently construing Lisa Walker's actions to be both an attempt to interfere with her son's arrest and a threat to himself and others, reacted swiftly and forcefully by applying an arm bar, a standard maneuver taught to police offers by the Counsel on Law Enforcement Education and Training (CLEET), lifting Lisa Walker several feet off of the ground and slamming her onto her back. As Lisa Walker struck the ground, her shirt lifted up above her head, exposing her breasts, and she experienced intense pain in her left knee. Yates then straddled the still-struggling Lisa Walker, attempting to roll her over on her stomach so that he could handcuff her. During their struggle, Lisa Walker's loose fitting pajama pants began sliding down below her waist, exposing her naked backside. As the same time, Pearson, still back-peddling away from Lisa Walker, tripped and fell, losing control of his dog. Unbeknownst to Yates, the dog lunged forward and bit Lisa Walker's injured left leg, breaking the skin and tugging her pajama pants further down her body. Recovering quickly, Pearson pulled the dog off of and away from Lisa Walker.

Having witnessed Lisa Walker's altercation with Yates, Shearrer began running toward Yates. According to Plaintiffs, a group of officers tackled Shearrer before he could reach Yates,

although Yates and Pearson contend that Shearrer actually grabbed Yates from behind and attempted to pull him away from Lisa Walker before other officers could reach and subdue him. Shearrer and Lisa Walker were both arrested for interfering with an officer in the performance of his duties. Although Shearrer and Tommy Walker were transported directly to the Muskogee County Jail, Lisa Walker was first taken to a local hospital, where doctors cleaned and bandaged the dog bite on her leg.

Following Plaintiffs' arrests, Pearson approached Byrd, a former foster child who had been living at 3510 Oklahoma for some time, and sought Byrd's leave to search the home. Although Byrd was unwilling to consent to a search of the entire home, he did consent to a search of the bedroom he shared with Tommy Walker. After searching the bedroom thoroughly, Pearson departed.

On November 16, 2006, Plaintiffs filed suit against Defendants Yates, Thompson, and Pearson, as well as several unnamed "John Does" pursuant to 42 U.S.C. § 1983, alleging that Defendants violated their rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution while acting under color of state law.[1] As a result of Defendants' actions, Plaintiffs requested actual damages for "physical, mental, and emotional pain, and...property loss due to the damage and destruction Defendants caused to their residence" (Am. Compl. ¶ 22 at 6), as well as punitive damages.

On May 17, 2007, Pearson, like his fellow Defendants, filed a motion for summary

---

[1]Although Plaintiffs subsequently amended their complaint to name additional police officers as defendants and to remove the "John Does," Plaintiffs failed to serve the new defendants and, on July 6, 2007, stipulated to the dismissal with prejudice of all unserved defendants. Thus, only Yates, Thompson, and Pearson remain as Defendants in the present action.

5

judgment. In his motion, Pearson asserts that he is entitled to qualified immunity from Plaintiffs' § 1983 claims because Plaintiffs cannot prove that Pearson violated any of their clearly established constitutional rights. Rather than respond specifically to Pearson's motion, each Plaintiff has filed a response addressing all three Defendants' motions for summary judgment collectively.

## Discussion

As a general rule, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*. In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

As the Tenth Circuit has noted, however, "summary judgment decisions involving a qualified immunity defense are subject to a somewhat different analysis on review than are other summary judgment rulings." *Oliver v. Woods*, 209 F.3d 1179, 1184 (10th Cir. 2000). "When an officer asserts a defense of qualified immunity, the plaintiff bears a heavy two-part burden." *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007). First, "[t]he plaintiff...must...establish that the defendant violated a constitutional right." *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007). If, viewed in the light most favorable to the plaintiff, "the officer's conduct did not

violate a constitutional right, the inquiry ends and the officer is entitled to qualified immunity." *Wilder*, 490 F.3d at 813; *see Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Cortez*, 478 F.3d at 1114.

"If, on the other hand, a violation has been shown, the plaintiff must then show that the constitutional right was clearly established." *Cortez*, 478 F.3d at 1114; *see Saucier*, 533 U.S. at 201. As the Supreme Court has made clear, "[t]his inquiry...must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. Instead, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000). Moreover, it is the plaintiff that "bears the burden of articulating clearly established law." *Novitsky v. City Of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007).

"If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity. *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). "Thus, a defendant is entitled to qualified immunity if the plaintiff fails to show a violation of a constitutional right at all." *Id*. Likewise, "a defendant is entitled to qualified immunity if the plaintiff fails to show that the law was clearly established." *Id*. As a result, "[o]nly if the plaintiff succeeds in carrying his two-part burden, does the burden shift to the defendant...[to] show that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter

of law." *Id*.

In their Amended Complaint, Plaintiffs allege that Defendants (1) used "excessive [force] under [the] circumstances" (Am. Compl. ¶ 10 at 3); (2) "restrain[ed], arrest[ed], and imprison[ed]... Plaintiffs...against their will and without legal or factual justification" (*id*. ¶ 12 at 4); (3) "effectuated a search of the Plaintiffs' residence...without a warrant, without the Plaintiffs' consent, without the officers seeing contraband in plain view, and without any exigent circumstances that would negate the need for a warrant" (*id*. ¶ 13); and (4) "caused extensive property damage in an attempt to recover evidence of the alleged burglary" (*id*. ¶ 14). Plaintiffs assert that Defendants' actions violated the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. Although Plaintiffs' Amended Complaint fails to identify which of the officers present at the scene engaged in each of the allegedly illegal activities, the Court construes Plaintiffs' Amended Complaint to assert against Pearson claims relating to (1) the warrantless arrests of Tommy Walker, Lisa Walker, and Shearrer, (2) the use of excessive force against Lisa Walker and Shearrer, (3) the wrongful imprisonment of Tommy Walker, Lisa Walker, and Shearrer, and (4) the warrantless search of Plaintiffs' home. The Court addresses these claims separately below.

A.  **Whether the Warrantless Arrests of Tommy Walker, Lisa Walker, and Shearrer Violated Their Fourth Amendment Rights**

"A police officer may arrest a person without a warrant if he has probable cause to believe that the person committed a crime." *Romero*, 45 F.3d at 1476. "'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the

8

arrestee has committed or is committing an offense.'" *Id*. (quoting *Jones v. City and County of Denver, Colo.*, 854 F.2d 1206, 1210 (10th Cir. 1988)). Moreover, in the context of an action brought pursuant to § 1983, "the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Indeed, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Id*. The Court addresses the reasonableness of Plaintiffs' warrantless arrests separately.

   1.   **Tommy Walker's Arrest**

In support of his contention that a reasonable officer in his position could have believed there was probable cause to arrest Tommy Walker, Pearson notes that (1) he had used his trained police dog to track a scent trail from the scene of a burglary directly to Tommy Walker's residence (Pearson's Mot. Br. ¶ 4 at 1), (2) the soles of a pair of shoes discovered on the front porch of Tommy Walker's home matched a footprint left at the crime scene (*id*. ¶ 5), and (3) a witness to the burglary who accompanied police to Tommy Walker's home positively identified Tommy Walker as one of the perpetrators of the burglary (*id*. ¶ 6 at 1-2). Based upon these uncontested[2] facts, Pearson argues that he and the other officers possessed probable cause to

---

[2] Pursuant to Local Civil Rule 56.1(c), "[t]he response brief in opposition to a motion for summary judgment...shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist." Each of these separately numbered facts "shall, if applicable, state the numbered paragraphs of the movant's [statement of material] facts that are disputed." *Id*. "All material facts set forth in the statement of material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." *Id*. None of the statements of material fact set forth in Pearson's motion are specifically controverted by Plaintiffs' respective statements of fact. Accordingly, each of the material facts set forth in Pearson's statement are deemed admitted for purposes of his motion.

believe that Tommy Walker was involved with the burglary. As a result, Pearson asserts that the warrantless arrest of Tommy Walker did not violate Tommy Walker's Fourth Amendment rights.

In contrast, Tommy Walker argues that his arrest "was completely without probable cause." (Tommy Walkers' Resp. Br. at 7.) In support of his argument, Tommy Walker asserts that at the time of his arrest, Tommy Walker "was a sixteen year old kid...[but] [t]he police had nothing else to go on except a black and a white man." (*Id*.) Moreover, Tommy Walker attempts to undermine the reliability of the witness's identification of him as one of the burglars by noting that "the break-in happened at night," "it was still dark when [he] came outside," and "the witness was far away, behind overgrown brush and sitting behind tinted windows." (*Id*.) According to Tommy Walker, "[t]his gives police no reason to suspect [he] was one who broke into the store." (*Id*.)

In spite of Tommy Walker's arguments, however, the Court notes that the accuracy of the witness's identification is not itself determinative of whether, based on the fact that the witness identified Tommy Walker as one of the burglars, in conjunction with the other facts and circumstances known to Pearson, a reasonable officer in Pearson's position could have believed there was probable cause supporting Tommy Walker's arrest. Instead, based upon the undisputed facts of this case, the Court finds that a reasonable officer in Pearson's position could have believed that probable cause existed for Tommy Walker's arrest. The Court therefore concludes that Pearson is entitled to qualified immunity from Tommy Walker's § 1983 claim premised on his warrantless arrest.

### 2. Lisa Walker's Arrest

In support of his contention that he "had probable cause to arrest...Lisa Walker based

upon information known to him at the time of [her] arrest," (Pearson's Mot. Br. at 10), Pearson notes that after watching Tommy Walker's arrest, "Lisa Walker ran toward Ron Yates, [himself], and the eye witness acting irate, yelling and screaming, and put[] her hands on...Yates" (*id*. ¶ 11 at 2). As a result, Lisa Walker "was arrested for interfering."[3] (*id*. ¶ 12.) In contrast, Lisa Walker notes that "[i]n the beginning [the police officers] were looking for two men, one white and one black for breaking into a convenience store." (Lisa Walker's Resp. Br. at 11.) Lisa Walker then expresses confusion as to "[h]ow...it [went] from that to arresting Lisa Walker," asserting her belief that Pearson and the other officers "arrested [her] for asking Ron Yates for help in the arrest of her son." (*Id*.)

The Court notes that Lisa Walker does not contest any of Pearson's assertions concerning the presence of himself, Yates, and the witness or Lisa Walker's own hysterical behavior. Indeed, in her deposition testimony, Lisa Walker states that she came toward Yates "screaming, crying, and pleading" and that she "touched [Yates'] arm." (Lisa Walker's Resp. Br. Ex. 10 at 129.) In contrast, the unchallenged deposition testimony of both Yates and Pearson indicates that they expressly directed Lisa Walker to stay away, and that she failed to comply with their order. (Pearson's Mot. Br. Ex. 18 at 41; Pearson's Mot. Br. Ex. 19 at 76.) Thus, under the circumstances as established by the uncontested facts and evidence presented, the Court finds that probable cause existed to believe that Lisa Walker was interfering with the arrest of Tommy Walker. Accordingly, the Court concludes that Pearson is entitled to qualified immunity from Lisa Walker's § 1983 claim premised on her warrantless arrest.

---

[3] "Any person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor." Okla. Stat. tit. 21, § 540.

### 3. Shearrer's Arrest

According to Pearson, while Yates was in the process of arresting Lisa Walker, Shearrer "ran to where...Yates was taking Lisa Walker into custody and...[attempted to] pull [Yates] off of [Lisa Walker]" (Pearson's Mot. Br. ¶ 21 at 3), prompting other officers to "remove[] [Shearrer] from the back of Yates" (*id.* ¶ 22). Although Shearrer acknowledges that he "ran off the porch to see if [Lisa Walker] was okay" (Shearrer's Resp. Br. ¶ 9 at 5), Shearrer asserts that he did not "touch[] Ron Yates." (Shearrer's Resp. Br. Ex. 6 at 38.) Shearrer therefore argues that because he "never assaulted an officer there was no probable cause to use any type of force on him or to arrest him." (Shearrer's Resp. Br. at 9.)

Nevertheless, the Court concludes that whether Shearrer made physical contact with Yates is irrelevant to whether Pearson had probable cause to arrest Shearrer. Like Lisa Walker, Shearrer was arrested for "interfer[ing] with the arrest of Lisa Walker" (Pearson's Resp. Br. at 11.) As noted above, Oklahoma law makes it a misdemeanor to "willfully delay[] or obstruct[] any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor." Okla. Stat. tit. 21, § 540. Moreover, the Oklahoma Supreme Court has made clear that "[p]hysical force is but one way of obstructing an officer," and that even "words...may suffice to support a conviction for Obstructing an Officer." *Trent v. State*, 777 P.2d 401, 402 (Okla. 1989). Given this low threshold for interference, the Court finds that a reasonable officer in Pearson's position could have believed that probable cause existed to arrest Shearrer for interfering with an officer based upon his act of charging threateningly at officers while they were attempting to subdue and detain Lisa Walker, thereby disrupting Lisa Walker's arrest. Accordingly, Pearson is entitled to qualified immunity from Shearrer's § 1983 claim premised

on his warrantless arrest.

B. **Whether the Use of Force Against Lisa Walker and Shearrer Violated Their Fourth Amendment Rights**

Plaintiffs Lisa Walker and Shearrer also allege that Pearson used excessive force in affecting their arrests. The Court notes that a "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [her] person...[is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). As the Supreme Court explained in *Graham*, "[b]ecause [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application...its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396 (internal citation and quotations omitted). Thus, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Id*. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d. Cir. 1973)) (internal citation omitted). Instead, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. The Court analyzes Pearson's use of force against Lisa Walker and Shearrer separately.

1. **The Use of Force Against Lisa Walker**

As Pearson notes in his motion brief, "all parties agree that John Pearson did not sic [his police dog]...upon Lisa Walker." (Pearson's Mot. Br. at 11). Instead, the undisputed material facts of the case reveal that (1) Lisa Walker approached Pearson, Yates, and the eye-witness who had identified Tommy Walker, screaming and yelling (*id*. ¶ 12 at 2), (2) Lisa Walker placed her hands on Yates (*id*.), (3) Pearson's police dog had been trained to protect Pearson and perceived Lisa Walker as a threat based upon her behavior (*id*. ¶ 14), (4) Pearson backed away from Lisa Walker to prevent his police dog from reaching her (*id*. ¶ 16 at 3), (5) Pearson slipped and fell (*id*.), and (6) while Yates had Lisa Walker on the ground subduing her, the police dog bit her left ankle (*id*. ¶ 17). Although Lisa Walker and Pearson disagree as to whether the police dog escaped Pearson's control or whether Lisa Walker came within the range of motion permitted by the dog's leash, Pearson contends that such a distinction is irrelevant, as the dog's subsequent attack did not constitute a use of force against Lisa Walker, and therefore could not have violated Lisa Walker's constitutional rights.

In her response brief, Lisa Walker seemingly concedes that the dog's attack upon her was not the result of any intentional or willful act or omission on the part of Pearson. Instead, she contends that "Pearson was responsible for the dog at the time that he slipped and fell" and "[a]s a direct result of his slip and fall the dog was able to get to Lisa regardless of whether [Pearson] let go of the leash or not." (Lisa Walker's Resp. Br. at 10.) Lisa Walker explains that "[w]hile this is not a tort case in any way...dangerous animals are held to a strict liability standard," and "Pearson knew or should have known that as long as he is responsible for that dog, he needs to take strong precautions to make sure there are no unnecessary injuries." (*Id*.) Thus, Lisa Walker argues that the fact that Pearson "failed in his duties that night and Lisa Walker got

14

injured...amount[s] to a violation of her Fourth Amendment [r]ights." (*Id*. at 10-11.)

In spite of her arguments, Lisa Walker identifies no cases in which an inadvertent attack by a police dog has been held to constitute a use of excessive force by a police officer in violation of the Fourth Amendment. Indeed, even if Pearson's failure to prevent the police dog from biting Lisa Walker somehow constituted a use of force by Pearson, as Lisa Walker's own argument makes clear, this failure at most amounted to mere negligence. As the Supreme Court has previously stated, however, "a negligent act by a state official does not give rise to § 1983 liability." *Zinermon v. Burch*, 494 U.S. 113, 129 (1990); *see also Daniels v. Williams*, 474 U.S. 327, 331-333 (1986) ("[I]njuries inflicted by governmental negligence are not addressed by the United States Constitution...."). As a result, the Court concludes that Lisa Walker has failed to meet her initial burden of demonstrating a constitutional violation arising from the police dog's attack and Pearson is entitled to qualified immunity as to any § 1983 claim relating thereto.

### 2. The Use of Force Against Shearrer

With regard to his own excessive force claim, Shearrer merely alleges that he "was bulldogged and slammed to the ground" (Am. Compl. ¶ 10 at 3) or that "a group of officers jumped on [him]" (Shearrer's Resp. ¶ 9 at 5) and applied unreasonable force in "knock[ing] him to the ground" (*id*. at 9). Given the Court's previous findings concerning Shearrer's actions in running toward Yates and thereby interfering in Yates' arrest of Lisa Walker, and in light of his non-specific allegations, the Court finds that the decision of Pearson and the other officers to tackle Shearrer, even when viewed in the light most favorable to Shearrer, was reasonable under the circumstances and therefore did not violate Shearrer's Fourth Amendment rights.

### C. Whether the Imprisonment of Tommy Walker, Lisa Walker, and Shearrer Violated

### Their Fourteenth Amendment Rights

"Section 1983 imposes liability [only] for violation of rights protected by the Constitution." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). As the Supreme Court observed in *Baker*, "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." *Id*. Nevertheless, in their respective response briefs, Tommy Walker, Lisa Walker, and Shearrer all argue that "[s]ince there was no probable cause for [their] arrest[s] and [their] arrest[s] violated [their] Fourth Amendment rights, it follows that [their] jailing violates [their] Fourteenth Amendment rights." (Tommy Walker's Resp. Br. at 8; Lisa Walker's Resp. Br. at 11; Shearrer's Resp. Br. at 9.) As this forms the sole basis for Plaintiffs' claims that they were wrongfully imprisoned in violation of the Fourteenth Amendment, in light of the Court's previous findings that the warrantless arrests of Plaintiffs were lawful, the Court concludes that Plaintiffs have likewise failed to establish that their imprisonment subsequent to otherwise lawful warrantless arrests violates their Fourteenth Amendment rights. Consequently, Pearson is entitled to qualified immunity from Plaintiffs' § 1983 claims premised thereon.

### D.      Whether the Warrantless Search Plaintiffs' Home Violated Their Fourth Amendment Rights

"The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). "The prohibition does not apply, however, to situations in which voluntary consent has been obtained...from a third party who possesses common authority over the premises." *Id*. "The consent of a third party to a search of common premises is effectual if the third party has

either the actual authority or the apparent authority to consent to a search." *United States v. Gutierrez-Hermosillo*, 142 F.3d 1225, 1230 (10th Cir. 1998). "[A] third party has [actual] authority to consent to a search of property if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it." *United States v. Rith*, 164 F.3d 1323, 1329 (10th Cir.1999). "The 'apparent authority' test for determining the reasonableness of the officer's belief is an objective one: '[W]ould the facts available to the officer at the moment...warrant a man of reasonable caution [to believe] that the consenting party had authority over the premises?'" *United States v. Kimoana*, 383 F.3d 1215, 1222 (10th Cir. 2004) (quoting *Rodriguez*, 497 U.S. at 188).

In his uncontested statement of material facts, Pearson notes that Wesley Byrd "had been staying at the Plaintiffs' home for quite some time, and had been there about two weeks at the time of [Plaintiffs' arrest]" (Pearson's Mot. Br. ¶ 24 at 4), "was a foster child of the Plaintiffs in the home in 2004" (*id*. ¶ 25), "stayed at the home by himself while the three Plaintiffs were taken to jail" (*id*. ¶ 26), and "continued to stay at the home after Plaintiffs' arrest" (*id*. ¶ 28). Also uncontested are Pearson's assertions that "[s]hortly after all three Plaintiffs were arrested and removed from the premises...Pearson received permission from Wesley Byrd to search the bedroom [he shared with Tommy Walker]" and that "Pearson believed Wesley Byrd to be eighteen years of age at the time" (*id*. ¶ 28). Based upon these facts, Pearson asserts that Byrd, as a foster child and resident of Plaintiffs' home, had mutual use of and control over the bedroom that he shared with Tommy Walker, if not the entire home, and therefore possessed actual authority to consent to a search of his bedroom. Alternatively, Pearson contends that Byrd possessed apparent authority to consent to the search of his bedroom, and that Pearson's reliance

17

upon Byrd's consent in searching his bedroom was reasonable. Under either standard, Pearson argues that his actions did not violate Plaintiffs' Fourth Amendment rights, entitling Pearson to qualified immunity from any § 1983 claims premised upon his search of Byrd's bedroom.

The Court notes that neither Tommy Walker nor Shearrer challenges Pearson's arguments in their respective responses. In contrast, Lisa Walker, although acknowledging that Pearson sought and received permission from Byrd to search his bedroom, nevertheless contends that Pearson's search of her home violated her Fourth Amendment rights. First, she alleges that after searching the bedroom, Pearson "went into the living room [and] searched it," "turned over a CD stand and walked over some CDs, ruining them," and "went outside and looked in the crawlspace under the house," thereby exceeding the scope of Byrd's consent. (Lisa Walker's Resp. Br. at 11-12.) Moreover, Lisa Walker asserts that Byrd "had no authority to consent to any search of any part of the house at all" because he "did not have constant access [or a key] to the house" and therefore "did not have mutual use of the property by joint access, or control for most purposes." (*Id*. at 12) Indeed, she states that Byrd "did not consider [the bedroom to be] his bedroom." (*Id*.) Finally, Lisa Walker asserts that Byrd "was only sixteen years old, not old enough to consent to a search." (*Id*.)

As Pearson correctly notes, however, Lisa Walker has not offered any evidence in support of her various allegations. Instead, in support of her statement that Pearson "illegally searched the house...and destroyed some of [Plaintiffs] property" (Lisa Walker's Resp. Br. ¶ 24 at 7), Lisa Walker cites an excerpt from Pearson's own deposition in which Pearson, responding to questions by Plaintiffs' counsel concerning some pictures not made a part of the summary judgment record, expressly *denies* searching other parts of Plaintiffs home or damaging

18

Plaintiffs' property. (Lisa Walker's Resp. Br. Ex. 13.) Similarly, in support of her statement that Byrd "was a minor at the time [and] was not a resident at the home" (Lisa Walker's Resp. Br. ¶ 25 at 7), Lisa Walker again cites Pearson's deposition, in which Plaintiffs' *counsel* asserts that Byrd "wasn't eighteen at the time" and to which Pearson responds that Byrd "told me he was eighteen at the time." (Lisa Walker's Resp. Br. Ex. 13 at 63.) Neither Lisa Walker nor the other Plaintiffs have identified any affidavits, depositions, or other exhibits providing evidentiary support for Lisa Walker's factual allegations. Because Lisa Walker's response does not "by affidavits or as otherwise provided...set forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), the Court concludes that her unsupported factual allegations should be disregarded.

Instead, based upon Pearson's undisputed statement of material facts, the Court concludes that Byrd, as a co-resident and foster child of Lisa Walker and Shearrer, possessed actual authority to consent to a search of his bedroom, and, alternatively, that a person of reasonable caution in Pearson's position would have believed that Byrd had authority to consent to a search of his own bedroom. As a result, Pearson's warrantless search of the bedroom pursuant to Byrd's consent did not violate Plaintiffs' Fourth Amendment rights. Accordingly, Pearson is entitled to qualified immunity from any § 1983 claims premised upon his warrantless search of Plaintiffs' home.

## Conclusion

For the reasons set forth above, the Court finds that Defendant John Pearson is entitled to qualified immunity from all of Plaintiffs' claims against him pursuant to 42 U.S.C. § 1983. The Motion for Summary Judgment by Defendant John Pearson (Docket No. 50) is therefore

GRANTED.

IT IS SO ORDERED this 10th day of September, 2007.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma